UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
:
DYLAN G. JOHNSTON,                                :
:
                     Plaintiff,            :
:
      - against -                          :
:
CARNEGIE CORPORATION OF NEW YORK,      :
ELLEN BLOOM, VARTAN GREGORIAN, and      :
JEANNIE D'ONOFRIO,                      :
:
                    Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 23, 2011

10 Civ. 1681 (PAC) (DF)

ORDER

HONORABLE PAUL A. CROTTY, United States District Judge:

    *Pro se* Plaintiff Dylan G. Johnston ("Johnston" or "Plaintiff") brings this action against his former employer, defendant Carnegie Corporation of New York ("Carnegie"), as well as certain members of its management — specifically, President Vartan Gregorian ("Gregorian"), Chief of Staff and Operations Jeannie D'Onofrio ("D'Onofrio"), and Vice President of Human Relations Ellen Bloom ("Bloom") (collectively, the "Individual Defendants") (all, collectively, "Defendants"). Johnston claims that Defendants discriminated against him based on his mental disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin Code § 8-101, *et seq.* ("NYCHRL"). The case was referred to Magistrate Judge Freeman on March 15, 2010 for general pretrial supervision.

    Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) on two grounds. First, Defendants argue that Johnston's claims are barred by a release Johnston signed in exchange for his severance package. Second, Defendants argue that Johnston fails to allege facts sufficient to support

his claims.  Magistrate Judge Freeman issued her Report and Recommendation ("R&R") on February 24, 2011, recommending that the Court grant Defendants' motion to the extent it seeks dismissal of the ADA claims asserted against the Individual Defendants in their individual capacities.  Magistrate Judge Freeman further recommended that the Court afford Plaintiff 30 days to replead his failure-to-promote claim.  Finally, Magistrate Judge Freeman recommended that the Court deny Defendants' motion to dismiss in all other respects.  Johnston timely filed objections on March 9, 2011.  Defendants filed no objections.

Having reviewed the R&R as well as Johnston's objections, the Court adopts Magistrate Judge Freeman's Report and Recommendation.  The Defendants' motion to dismiss is, therefore, GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

**I. Facts**

Johnston was diagnosed with bipolar disorder at age 17 and began working at Carnegie as a paid intern in November 2006.  At the outset, he worked 20 hours per week.  In June 2007, he was asked to take on additional responsibilities and work more hours and, eventually his average hours worked per week grew from 20 to roughly 32.  In January 2008, Johnston applied for a full-time "Investment Associate" position, but he later withdrew his application after he was discouraged from pursuing the position and was informed that there was a large volume of applicants.

On August 11, 2008, D'Onofrio told Johnston that his internship would conclude in December 2008, and suggested that Johnston seek employment elsewhere.  Johnston continued working an average of 32 hours per week until November 2008.  At that time, his hours were reduced back to 20 hours per

---

[1] Unless otherwise noted, all facts are taken from the R&R.

week, and Johnston alleges that D'Onofrio reprimanded him for working additional time. In addition, Bloom allegedly told Johnston that he would not be given a full-time job "because of benefits."

In a January 8, 2009 email to Bloom, Johnston requested a raise in his hourly pay. He also asked Bloom if his reduction in hours was "an issue of benefits." Bloom denied Johnston's request for a raise, and encouraged him to seek employment elsewhere. In response, Johnston pressed Bloom for a reason for his reduction in hours, stating that "[i]f it is because you did a background check and found that I was disabled and think your healthcare co-pay will go up — very low indeed." (EEOC Charge 25.) During a meeting with Bloom and D'Onofrio the following day, Johnston's employment was terminated.

Upon termination, Johnston was offered a severance package in exchange for signing a release of liability. The details of the agreement were set out in a letter dated January 12, 2009. (*See* Gilbride Decl., Ex. B ("Agreement")). According to the Agreement, Johnston would continue to be paid through March 13, 2009, but he would cease working on January 12, 2009. As a result, he would receive a lump-sum payment of $4,050.[2] Johnston had 21 days to review, sign and return the document, and he could unilaterally revoke the release for seven days after signing it. On January 15, 2009, Johnston signed the release and submitted it to Carnegie. Johnston claims that he continued to work without compensation until February 27, 2009 in exchange for positive recommendations and referrals for future employment. Johnston claims the recommendations and referrals he received were inadequate, and that further recommendations were withheld once Carnegie learned that Johnston had filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

Johnston claims that he disclosed his medical condition to Defendants anecdotally over the course of his employment, and that, as a result, Defendants unlawfully discriminated against him.

---

[2] The buyout calculation was $15 per hour at a rate of 30 hours a week for the period between January 12 and March 13, 2009.

Specifically, Johnston claims that Carnegie actions were designed to prevent him from obtaining medical benefits, that he was terminated in retaliation for his allegations of discrimination in his January 8, 2009 email exchange with Bloom, that he was not adequately compensated for his work between January 12, 2009 and February 27, 2009, and that Carnegie withheld recommendations and referrals after learning that Johnston had filed an EEOC claim. Moreover, Johnston claims that the release he signed is unenforceable because he did not understand it and that he signed the release as a result of duress, undue influence, and misrepresentations made by Defendants.

## II. Procedural History

Johnston filed his EEOC charge against Defendants on October 2, 2009. The EEOC was unable to conclude that the law had been violated, and issued Johnston a "right to sue" letter on November 10, 2009. Plaintiff commenced this action *pro se* on February 3, 2010. The Court referred the matter to Magistrate Judge Freeman on March 15, 2010 and Defendants moved to dismiss the claim on June 22, 2010. On February 24, 2011, Magistrate Judge Freeman issued her R&R recommending that Defendants' motion be granted in part and denied in part. Johnston timely filed objections on March 9, 2011. Defendants filed no objections.

## III. Magistrate Judge Freeman's R&R

A. Validity of the Release

A release of a federal discrimination claim is only valid if the individual's waiver of rights can be characterized as knowing and voluntary after considering the totality of the circumstances. Laramee v. Jewish Guild for the Blind, 72 F. Supp. 2d 357, 359 (S.D.N.Y. 1999). In considering the "totality of the circumstances," a court should consider: "1) the plaintiff's education and business experience, 2) the amount of time plaintiff had possession of or access to the agreement before signing it, 3) the role of

plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law." Bormann v. AT&T Communications, Inc., 875 F.2d 399, 403 (2d Cir. 1989).  Under New York law, "a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998).  The Bormann, factors, however, are "just as relevant to a determination of the validity of a waiver of [state law] claims." Skluth v. United Merchants & Mfrs., Inc., 559 N.Y.S.2d 280, 282 (App. Div. 1st Dep't 1990).

  Magistrate Judge Freeman found that the first Bormann factor — education and experience — does not particularly favor either validity or invalidity, because "it is not clear that Plaintiff's education and experience gave him sufficient sophistication to understand all of the agreement's terms." (R&R 14.)  Magistrate Judge Freeman then found that the second Bormann factor — time to consider the agreement — cuts in favor of validity because the agreement specifically gave Johnston 21 days to review its terms. (Id. 15.)  Next, Magistrate Judge Freeman found that the third Bormann factor — Johnston's role in drafting the release — "slightly" favors invalidity because, although Johnston did not attempt to negotiate the release, he maintains that such an effort would have been futile. (Id.)  Magistrate Judge Freeman found that the fourth Bormann factor — the clarity of the agreement — weighs in favor of a finding of invalidity because the agreement was unclear with respect to Johnston's "rights concerning future compensation and severance, as well as unemployment benefits." (Id. 15-16.)  Next, Magistrate Judge Freeman found that the parties' submissions do not provide any information with respect to the fifth Bormann factor — whether Johnston consulted an attorney. (Id. 17.)  Lastly, Magistrate Judge Freeman found that the sixth Bormann factor — whether the consideration exceeded

5

the benefits to which Johnston was already entitled — supports a finding of invalidity at this juncture because "the parties appear to dispute the amount of consideration to which Plaintiff was entitled under the release agreement." (Id.)  Magistrate Judge Freeman also noted that Johnston's allegations of duress weighed against validity. (Id. 18.)  In sum, Magistrate Judge Freeman found that it would be premature to conclude whether or not Johnston's waiver was valid.  Accordingly, Magistrate Judge Freeman found that Defendants' motion to dismiss Johnston's federal claims should not be granted on this basis at this juncture.  (R&R 18-19.)  In addition, Magistrate Judge Freeman found that, as the release validity standard for the state and city law claims is essentially the same as the standard for federal claims, Defendants' motion to dismiss the state and city law claims should not be granted on this basis. (R&R 19.)

B. Adequacy of Pleading

*1. Knowledge of Disability*

Defendants argue that Johnston has failed to state a claim for discrimination because he has not adequately alleged that Defendants were aware that he was disabled.  (Def. Mem. 10-11.) Johnston alleges, nonetheless, that he disclosed his condition to D'Onofrio multiple times and also alleges that he made other anecdotal disclosures to co-workers that referenced therapy, medication and his history of mental illness. Magistrate Judge Freeman found that Johnston sufficiently pleaded that the Defendants were aware, or would have reason to believe that, Johnston was mentally disabled. (R&R 21.)

*2. Failure-to-Promote*

With respect to Johnston's failure-to-promote claim, Magistrate Judge Freeman found that "he has not alleged that he applied for a position and was rejected for that position." (Id.)  Specifically, in order to state a failure-to-promote claim, a plaintiff must allege that he or she applied for and was

6

rejected for a specific position, not that he or she generally asked to be promoted and was declined. Billups v. Dent Wizard Int'l Corp., No. 05 Civ. 9536 (DAB), 2010 U.S. Dist. LEXIS 60255, at *21-22 (S.D.N.Y. June 14, 2010). Here, although Johnston did apply for a position, he subsequently withdrew that application. While Johnston alleges that he was discouraged from applying for other positions, Magistrate Judge Freeman found that this was not sufficient to state a failure-to-promote claim. (R&R 22 (citing Brown v. Coach Stores, Inc., 163 F.3d 706, 710, 717 (2d Cir. 1998).)

In addition, Magistrate Judge Freeman found that there was no evidence that Defendants engaged in a "pattern or practice" of discrimination that would have rendered any application for promotion filed by Johnston "futile." (R&R 22 n.12 (citing Brown, 163 F.3d at 711.) Specifically, Magistrate Judge Freeman found that there was a "complete absence of any suggestion that other employees, besides himself, were subjected to discriminatory conduct by Defendants." (R&R 22. n.12.)

Because a court should not dismiss the claim of a *pro se* plaintiff "without granting leave to amend at least once[,] when a liberal reading of the complaint gives any indication that a valid claim might be stated," Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), Magistrate Judge Freeman found that Johnston should be afforded 30 days to replead the failure-to-promote claim. (R&R 22-23.)

*3. Retaliation*

Defendants also argue that Johnston has failed to state a claim for retaliation because his email complaint to Bloom was not protected activity under the ADA. (Def. Mem. 14-15.) "In order to establish retaliation under the ADA, the NYSHRL, or the NYCHRL, a plaintiff must show (1) that he participated in a protected activity, (2) that his employer was aware of the protected activity, (3) that his employer took adverse employment action against him, and (3) that there was a causal connection between the protected activity and the adverse employment action." (R&R 23 (citing Hanig v. Yorktown Cent. Sch. Dist., 384 F. Supp. 2d 710 (S.D.N.Y. 2005) (federal law) and Treglia v. Town of Manlius, 313 F.3d 713,

719 (2d Cir. 2002) (state and city law).) Protected activity must "put the employer on notice that the [plaintiff] believe[d] that discrimination [was] occurring." Conway v. Microsoft Corp., 414 F. Supp. 2d 450, 466 (S.D.N.Y. 2006).

As Johnston's email did reference his disability, Magistrate Judge Freeman found that "[a] reasonable interpretation of [his] e-mail is that [Johnston] believed management's proffered explanations were pre-textual, and that his hours were actually reduced because of his disability." (R&R 25.) As "[c]omplaints about conduct clearly prohibited by the statute need not mention discrimination or use particular language," Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007), Magistrate Judge Freeman recommended that the court deny Defendants' motion to dismiss with respect to Johnston's retaliation claim.

*4. Claims Against Individual Defendants*

Finally, the Individual Defendants argue that Johnston's state and city law claims should be dismissed because (1) Johnston has not adequately alleged that Defendants acted in the capacity of his "employers," and (2) that Johnston has not adequately alleged that they actively participated in the claimed unlawful conduct. (Def. Mem. 15-16.) To be held liable as an "employer" under § 296(1) of the NYSHRL, an individual defendant must be a "person having 'any ownership interest or any power to do more than carry out personnel decisions made by others.'" Pepler v. Coyne, 822 N.Y.S.2d 516, 517 (App. Div. 1st Dep't 2006) (quoting Patrowich v. Chemical Bank, 63 N.Y.2d 541, 543-44 (1984)).[3] Because Magistrate Judge Freeman found that the Individual Defendants had such power, she found that Johnston's state and city law claims should not be dismissed on this basis. (R&R 26.) Specifically, Magistrate Judge Freeman noted the high-level positions and responsibilities of the Individual

---

[3] "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." Feingold v. New York 366 F.3d 138, 159 (2d Cir. 2004) (citation and internal quotation marks omitted).

Defendants and the "Plaintiff's apparent belief that the Individual Defendants were responsible for the adverse employment actions taken against him." (Id. 26-27.)

In addition, Magistrate Judge Freeman found that Johnston "sufficiently alleged that the Individual Defendants aided and abetted the claimed discriminatory conduct against him." (Id. 27.) Under § 296(6), an individual defendant may be held personally liable if he "actually participates in the conduct giving rise to a discrimination claim." Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995). Although Magistrate Judge Freeman does note that Johnston does not state with certainty which of the Individual Defendants participated in the alleged adverse employment actions, she found that he has "set forth plausible allegations that all three [Individual Defendants] may have taken part." (R&R 28.) As a result, Magistrate Judge Freeman recommended that Johnston's state and city law claims be allowed to proceed. (Id.)

Magistrate Judge Freeman also recommended that the Court grant Defendants' motion to dismiss Johnston's ADA claims against the Individual Defendants because the Individual Defendants cannot be held liable in their individual capacities under the ADA. Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d. Cir. 2010).

**DISCUSSION**

**I. Standard of Review**

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a timely objection has been made to the recommendations of the magistrate judge, the court is obligated to review the contested issues *de novo*. Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998). The Court, however, "may adopt those portions of the Report [and Recommendation] to which no objections have been made and which are not facially erroneous." La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y 2000).

**II. Johnston's Objections**

Johnston objects to Magistrate Judge Freeman's treatment of his failure-to-promote claim. (Obj. 2.) In particular, Johnston takes issue with Magistrate Judge Freeman's determination that Johnston did not allege a pattern or practice of discrimination. (Obj. 2.) Johnston seeks to supplement his pleading with additional facts, apparently attempting to establish such a pattern or practice. As Magistrate Judge Freeman recommended affording Johnston 30 days to replead his failure-to-promote claim, Johnston may attempt to plead these facts — in addition to any other additional facts that he believes would establish such a pattern or practice — in an amended complaint.

As noted by Magistrate Judge Freeman, however, Johnston has not alleged that he actually applied and was rejected for a particular position for which he was qualified. Indeed, Johnston withdrew his application for the one position for which he applied. While Johnston has alleged that Defendants discouraged him from seeking a promotion, such discouragement does not give rise to a failure-to-promote claim. See Brown, 163 F.3d at 710. Accordingly, the Court adopts Magistrate Judge Freeman's recommendation and grants Johnston 30 days to replead.

The balance of Johnston's objections appear to be factual clarifications which Johnston is free to include in his amended complaint.

## CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Freeman's Report and Recommendation. Accordingly, Defendant's motion to dismiss is DENIED IN PART and GRANTED IN PART. Plaintiff's ADA claims against the Individual Defendants are dismissed with prejudice. Plaintiff is afforded 30 days to replead his failure-to-promote claim. In all other respects, Defendants'

motion to dismiss is DENIED. The Clerk of Court is directed to close the motion at docket number 6.

The Order of Reference dated March 15, 2010 remains in effect.

Dated: March 23, 2011
      New York, New York

                              SO ORDERED

                              PAUL A. CROTTY
                              United States District Judge

Copies mailed to:

Dylan G. Johnston
3904 South Sequoia Avenue
Broken Arrow, OK 74011

Joan M. Gilbride, Esq.
Kaufman Borgeest & Ryan, LLP
120 Broadway, 14th Floor
New York, NY 10271